UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| E. L. PHELPS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 11-1142 (ABJ) |
| JOHN CRUMPTON STOMBER, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Before the Court are two competing motions for appointment as lead plaintiff under Section 21(d)(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Because plaintiff Michael J. McLister and his co-movants best satisfy the requirements and purpose of the PSLRA, the Court will appoint them as lead plaintiffs in this action and approve their choice of lead counsel: Cuneo Gilbert & LaDuca, LLP and Greenfield & Goodman, LLC.

### BACKGROUND

This consolidated action consists of three related class actions alleging claims of securities fraud under the laws of the United States and the United Kingdom. Plaintiff E.L. Phelps filed the first complaint, *Phelps v. Stomber, et al.*, Civil Action No. 11-1142, on June 21, 2011, against former officers and directors of the Carlyle Capital Corporation ("CCC"). Phelps filed a second complaint, *Phelps v. Carlyle Capital Corp.*, Civil Action No. 11-1143, with nearly

identical claims against the corporate entity CCC on the same date.[1]  The Court consolidated these two actions (the "Phelps actions") at a status hearing on October 7, 2011.  *See* Minute Order, October 7, 2011.  The claims in these cases are premised on the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the PSLRA.

Plaintiff Jonathan Glaubach filed a related case, *Glabauch v. Carlyle Capital Corp. Ltd.*, *et al.*, Civil Action No. 11-1523, on August 24, 2011.  This proposed class action brings claims under Section 90 of the United Kingdom's Financial Services and Markets Act 2000 ("FSMA"), as amended, and is based on the same factual circumstances that gave rise to the *Phelps* actions.  For case management purposes, the Court also consolidated the *Glabauch* case with the *Phelps* actions at the status hearing on October 7, 2011.[2]

The plaintiffs in the Phelps action and Mr. Glabauch have moved for appointment as lead plaintiffs in this action. [Dkt. # 3 and # 4].  The plaintiffs in the Phelps action have asked the Court to appoint a group of investors – E.L. Phelps, Michael J. McLister, Dzing Jean Wu, Susan M. Liss, and William F. Schaefer (collectively, the "McLister Group") – or alternatively, plaintiff McLister, as lead plaintiff in this action.  Phelps' Mot. for Appt. as Lead Plaintiff at 1.  Plaintiff Glabauch asks the Court to appoint him as the lead plaintiff.  Glabauch Mot. for Appt. as Lead Plaintiff at 1.

---

1   These actions are nearly identical except that the *Phelps/Stomber* action asserts claims against several former officers and directors of CCC, whereas the Phelps/CCC action only makes claims against CCC.

2   In general, the PSLRA requires that a court consider and decide a lead plaintiff application within 90 days of publication of the required notice of the action.  *See* 15 U.S.C. 78u–4(a)(3)(B)(i). Where there is a pending motion to consolidate class actions, however, the PSLRA states that the court shall not make a lead plaintiff determination "until after the decision on the motion to consolidate is rendered." 15 U.S.C. 78u–4(a)(3)(B)(ii).  Under those circumstances, the PSLRA provides no fixed time for appointing the lead plaintiff but states that the appointment shall be made "[a]s soon as practicable after such [consolidation] decision is rendered."  *Id.*

After hearing from the parties at the status hearing on October 7, 2011, the Court was of the view that the resolution of the multiple anticipated dispositive motions could possibly narrow the issues in the case and obviate the lead plaintiff designation. So the Court ordered that it would defer consideration of the pending motions until after it heard the dispositive motions. Since that time, the parties have jointly submitted a proposed briefing schedule for the dispositive motions that is quite prolonged, and they have informed the Court that yet another complaint regarding the same set of facts and circumstances has been filed in the U.S. District Court for the Southern District of New York and may be transferred to this district. Both plaintiffs have also filed amended complaints adding claims. In light of these developments, the Court has determined that it would be in the interest of efficiency and judicial economy to appoint a lead plaintiff at this time in accordance with the statute, which requires that an appointment be made "[a]s soon as practicable" after such decision is made on any motion for consolidation. 15 U.S.C. 78u–4(a)(3)(B)(ii).

## ANALYSIS

I. **Lead Plaintiff**

　A. **Standard**

The PSLRA directs the Court to appoint as lead plaintiff the member or members of the purported class that is or are "the most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(I). The Court "shall adopt a [rebuttable] presumption that the most adequate plaintiff . . . is the person or group of persons that – [1] has either filed the complaint or made a motion in response to a notice . . . ; [2] in the determination of the court, has the largest financial interest in the relief sought by the class; and [3] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id*. § 78u-

4(a)(3)(B)(iii)(I).   This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff – [1] will not fairly and adequately protect the interests of the class; or [2] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. § 78u-4(a)(3)(B)(iii)(II).

As another court in this district has observed, "[t]he [lead plaintiff] selection process begins once the first plaintiff files an action and publicizes the pendency of the action, the claims made, and the purported class period." *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 17 (D.D.C. 2006), citing 15 U.S.C. §78u-4(a)(3)(A)(i).  "The second step is for the court to choose the plaintiff who has the greatest financial stake in the outcome of the case." *Id*., citing 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).  "The PSLRA's presumption that the most adequate plaintiff is the one with the largest financial interest reflects Congress' desire to curtail lawyer-driven securities class actions."  *Id*., citing H.R. Conf. Rep. No. 104-369, at *31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730.  "To achieve this goal, Congress sought to attract lead plaintiffs with a significant financial stake in the litigation on the assumption that they would be more likely to play an active role in directing and overseeing the litigation." *Id*., citing *Barnet v. Elan*, 236 F.R.D. 158, 161 (S.D.N.Y. 2005).

The PSLRA also requires the court to determine whether the plaintiff with the greatest financial stake in the case satisfies Rule 23(a) of the Federal Rules of Civil Procedure. *See id*. at 18.  "[A]lthough Rule 23(a) includes four requirements – numerosity, commonality, typicality, and adequacy – the presumptive lead plaintiff 'need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.'" *Reese v. Bahash*, 248 F.R.D. 58, 62 (D.D.C. 2008), quoting *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. at 18.

The final step is to allow other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements. *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. at 18, citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "If the presumption is overcome, the court must then turn to the plaintiff with the next highest financial interest in the litigation and start the process over again until all challenges have been exhausted." *Id*.

### B. The Court Appoints the McLister Group as Lead Plaintiff.

Under this framework, the Court concludes that the members of the McLister group are "the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).[3] Plaintiff McLister alleges that he individually lost $1,184,688.16 as a result of the alleged misconduct. Phelps' Mem. for Appt. Lead Plaintiff at 3; McLister Decl. at 3. Collectively, the McLister group alleges losses in excess of $2,700,000 from their purchases of CCC securities during the class period. Phelps' Mem. for Appt. Lead Plaintiff at 4; Decls. of McLister, Wu, Liss, and Schaefer. In comparison, plaintiff Glabauch states that he purchased 500 shares of CCC securities in the Initial Public Offering at a price of $19.00 per share, but he does not calculate the amount of losses he incurred. Glabauch Decl. at ¶ 4. The McLister group contends that in light of these facts, Glabauch lost, at most, $9,500, which Glabauch does not dispute. Phelps' Opp. [Dkt. # 11] at 2. While this is not an insignificant sum of money, it pales in comparison to the sum lost by McLister individually and the McLister Group collectively.

---

3   The Court notes, as an initial matter, that the McLister group complied with the PSLRA's procedural requirements by timely moving to be appointed lead plaintiff, signing and filing a certification as described in 15 U.S.C. § 78u-4(a)(2), and selecting and retaining counsel to represent itself and the class. *See Plumbers Local #200 Pension Fund v. The Wash. Post Co.*, 274 F.R.D. 33, 35 (D.D.C. 2011).

Because the McLister Group has the largest financial interest in the litigation, it is entitled to a presumption that the group would be the most adequate lead plaintiff.

The Court also finds that Glabauch has failed to rebut the statutory presumption that the McLister Group is the most adequate plaintiff. The McLister Group satisfies the typicality and adequacy requirements set forth in Rule 23(a) of the Federal Rules of Civil Procedure. The claims asserted by the McLister Group "are typical because they arose out of the same course of events as the claims of absent class members." *Reese*, 248 F.R.D. at 63. With respect to the adequacy requirement, the interests of the McLister Group are aligned with those of the purported class because "it has the largest financial interest in the relief sought by the class, and there is no evidence of any conflict between its interests and those of other class members." *Id*.

Glabauch contends that the McLister Group is not an adequate representative of the proposed class because they have asserted claims under different statutes. Glabauch asserts his claims under the laws of the United Kingdom, specifically the FSMA, while the McLister Group brings claims under the Exchange Act.[4] The fact that the plaintiffs are pursuing claims based on two different statutes is not sufficient to rebut the presumption the McLister Group is the most capable of adequately representing the interests of the class members. *Reese*, 248 F.R.D. at 63 (D.D.C. 2008) ("[T]he facts and claims of each class member do not have to be identical to support a finding of typicality.), citing *Thomas v. Albright,* 139 F.3d 227, 228 (D.C. Cir. 1998).; *see also Hevesi v. Citgroup*, *Inc.*, 366 F.3d 70, 82 (2d Cir. 2004), citing *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002). In fact, counsel for the McLister

---

4   Glabauch also argues that the claims brought by the McLister Group may not be actionable under the Supreme Court's decision in *Morrison v. Nat'l Austl. Bank, Ltd*., 561 U.S. ----, 130 S. Ct. 2869 (2010) and might be barred by the statute of limitations. Without reaching any conclusions about the ultimate viability of these arguments, the Court finds that at this stage of the litigation, they do not preclude the McLister Group from adequately representing the interests of the proposed class.

Group represented to the Court that if appointed, the group would consider including the FSMA claims in the anticipated consolidated amended complaint:

> I would represent that if Mr. Glaubach's only concern was whether we bring the UK claim, we'll be happy to bring it in the consolidated amended complaint. Should the facts develop sufficiently to justify the application of United Kingdom law under District of Columbia choice-of-law principles, that would be a good claim to pursue.

Tr. of proceedings on November 10, 2011 at 38. Thus, because the PSLRA's presumption has not been rebutted, the Court will appoint the McLister Group as lead plaintiff in this action. Mr. Glabauch will remain a named plaintiff in the consolidated action so that he may pursue any claims that the lead plaintiff does not press. *Hevesi*, 366 F.3d at 83.

## II.     Lead Counsel

With respect to the appointment of lead counsel, the PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-appointed lead plaintiff's decisions as to counsel selection and counsel retention." *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. at 21 (internal quotation marks and citations omitted). A court should not interfere with the lead plaintiff's selection of counsel unless it is necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Here, the McLister Group has selected Cuneo Gilbert & LaDuca and Greenfield & Goodman as its counsel. Both firms have "substantial experience prosecuting complex litigation . . . and are well qualified to represent the Class." Phelps Mem. at 9, citing Miller Decl. ¶¶ 4–5 and Exs. 2 and 3 (describing qualifications of class counsel). Because there is no dispute as to these firms' experience and qualifications, the Court approves of the McLister

Group's selections and will appoint the law firms of Cuneo Gilbert & LaDuca and Greenfield & Goodman as lead counsel in this action.

## CONCLUSION

For the foregoing reasons, the McLister Group's motion for appointment as lead plaintiff [Dkt. # 3] is granted and Jonathan Glabauch's competing motion [Dkt. # 4] is denied.

The scheduling order for the dispositive motions is amended as follows:

Lead Plaintiff has leave to file a consolidated amended complaint on or before December 5, 2011.  Counsel for Lead Plaintiff is directed to notify the defendants as soon as possible in advance of that date if it determines that a consolidated amended complaint will be filed.

If an amended consolidated complaint is filed, the following schedule will apply:

Defendants shall file any motions to dismiss on January 10, 2012.

Oppositions shall be due on February 24, 2012.

Replies are due on March 21, 2012.

**SO ORDERED.**

_____
AMY BERMAN JACKSON
United States District Judge

DATE:  November 16, 2011