UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| E.L. PHELPS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil No. 1:11-cv-01142-ABJ |
| | ) | CLASS ACTION |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) ) | |
| | ) | |
| JOHN CRUMPTON STOMBER, et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | |

JONATHAN GLAUBACH'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

## I.     INTRODUCTION

Pursuant to this Court's May 24, 2012 Minute Order, plaintiff Jonathan Glaubach ("Glaubach") respectfully submits this opposition to defendants' motions to dismiss the claim under §90 of the Financial Services and Markets Act of 2000 ("FSMA").   In addition, Glaubach submits this opposition because lead plaintiff's response to defendants' motions to dismiss the §90 claim did not include numerous facts indicating the claim should not be dismissed and stated that the claim could not be supported without discovery.   *See* Memorandum of Points and Authorities in Opposition to Motions to Dismiss (Dkt. 56) at 71.

## II.    ARGUMENT

In this case, plaintiffs allege, *inter alia*, that defendants violated §90 of the FSMA by issuing a prospectus that included materially untrue or misleading statements or omissions.   ¶¶187-191.[1] Plaintiffs bring this action as a class action on behalf of: (1) those who purchased or otherwise acquired Class B shares or restricted depositary shares of Carlyle Capital Corporation Limited ("CCC") in its offering and were damaged thereby; and (2) all persons who purchased or otherwise acquired Class B shares of CCC in market purchases from July 4, 2007 through March 17, 2008. ¶30.

The Complaint is subject to the Private Securities Litigation Reform Act of 1995, which stays all discovery until the Court denies defendants' motions to dismiss.   15 U.S.C. §78u-4(b)(3)(A).  Thus, as stated in the first paragraph of the Complaint, the allegations are based on lead counsel's investigation of public documents and other information, but not on any documents that could be obtained in discovery.

_____

[1]      Unless indicated otherwise, all paragraph ("¶_") references are to the Consolidated Complaint ("Complaint"), filed on December 5, 2011 (Dkt. 42).

As this Court and the United States Supreme Court have stated, claims in any action are adequately pled if the facts alleged raise a reasonable expectation that discovery will reveal evidence that confirms the claims.  *Fox v. District of Columbia*, No. 10-2118 (ABJ), 2012 U.S. Dist. LEXIS 44141, at *16-*17 (D.D.C. Mar. 30, 2012); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to provide only "'a short and plain statement of the claim showing that the pleader is entitled to relief'" in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (citations omitted; alteration in original).  The complaint does not need detailed factual allegations to survive a motion to dismiss, but the factual allegations "must be enough to raise a right to relief above the speculative level."  *Id.*  Facts that "suggest" or constitute "plausible grounds to infer" that defendants in this case violated §90 of the FSMA are sufficient to survive a motion to dismiss because all that is required is "enough fact to raise a reasonable expectation that discovery will reveal evidence" that defendants did violate §90 of the FSMA.  *Id.* at 556.

As explained below and in the Declaration of Michael Blair, Q.C. ("Blair Decl."), the facts included in the Complaint and the CCC offering documents are more than sufficient to infer that defendants violated §90 of the FSMA.[2]  Mr. Blair is one of Her Majesty's Counsel practicing as a barrister from Chambers in London.  Blair Decl., ¶1.  He was General Counsel to the Board of the Financial Services Authority, the primary securities market regulator in the United Kingdom ("UK") and has extensive experience in financial regulatory matters, including banking, insurance and securities markets issues.  *Id.*, ¶¶10-16.

---

[2]     There is also a claim under §85 of the FSMA, and common law claims, that could be added to the Complaint filed by the lead plaintiff.  Blair Decl. ¶¶19-28, 56.

Section 85 of the FSMA requires an approved prospectus before an offer of transferable securities to the public in the UK.  Section 90 of the FSMA enables those who acquire securities that have been the subject of a prospectus offering securities to the public in the UK a right to recover losses from persons responsible for the misrepresentations in the prospectus that caused the loss.  *Id.*, ¶¶19-32; Declaration of Anthony George Bompas, Q.C. ("Bompas Decl."), ¶25.4 & Ex. B at 37-38 (FSMA §90).[3]  In addition to showing there were misrepresentations in the prospectus, to recover under §85 or §90: (1) there must be a sufficient nexus between the offering of the shares by the issuer and the UK; (2) the issuer must have offered the shares to the public in the UK; and (3) the UK must be the "home state" for the offering.  *See generally* Blair Decl.  In this case, the offering by CCC satisfies each of these requirements.

### A.    There Is a Sufficient Nexus Between the Offering and the UK

The facts alleged in the Complaint and included in the June 19, 2007 Offering Memorandum (Dkt. 52-3) ("Offering Memorandum" or "Offering Mem.") demonstrate that there was a sufficient nexus between the offering and the UK.  For example, the managers or bookrunners for the offering were six London banks.  *See* Offering Mem. at 147, 149, 163.  It was stated in the Offering Memorandum that the six London banks intended to make a market in the Class B shares after the offering and engage in activities to stabilize, maintain or otherwise affect the price of the shares.  *Id.* at 33, 150.  Indeed, one of the London banks, Citigroup Global Markets Limited, was the "stabilization manager."  *Id.* at 150.

---

[3]    Mr. Anthony Bompas is also a Queen's Counsel practicing as a barrister from Chambers in London.  Bompas Decl., ¶1.  Defendants rely on Mr. Bompas for their contention that the §90 claim should be dismissed.  *See* Motion to Dismiss for Failure to State a Claim by Defendants TC Group, L.L.C., TCG Holdings, L.L.C., Carlyle Investment Management L.L.C., John C. Stomber, William E. Conway, Jr., James H. Hance, Jr. and Michael J. Zupon ("MTD") (Dkt. 52) at 75-78.

The six London banks received $25.8 million in fees from the offering, and another $191.7 million of the offering proceeds were used to pay back an unsecured bridge loan from affiliates of the six London banks. *Id.* at 38, 52, 102-103, 149. Affiliates of the six London banks and other financial institutions made more than $16 billion in loans to CCC and provided credit facilities. *Id.* at 51, 102, 151. Many members of CCC's leveraged finance team were located in London. *Id.* at 63.

Defendants concede that the managers for the offering were London banks but contend that is legally irrelevant. MTD at 76-77. The only support for that contention is ¶¶46-50 of the Bompas Declaration. But Mr. Bompas cites no authority for his opinion and fails to mention the numerous facts set forth in the Offering Memorandum that establish a sufficient nexus between the offering and the UK. In addition, Mr. Bompas acknowledges that the six London banks were involved in the sale of the Class B shares to plaintiffs because the London banks were affiliates of the New York banks from which plaintiffs purchased their Class B shares. Bompas Decl., ¶49.

Mr. Bompas also concedes that §90 does create a cause of action if the UK was "the place where the material events took place." *Id.*, ¶36. It cannot be seriously disputed that six London banks purchasing the Class B shares and then offering them to specified members of the UK public constituted material events.[4]

### B.      The Class B Shares Were Offered to the Public in the UK

CCC offered the shares to the public in the UK. In fact, the offering was a "global" offering; and it is expressly stated in the Offering Memorandum that the Class B shares were being offered to

---

[4]      Defendants' reliance on *Lawson v. Serco*, [2004] EWCA Civ. 12 [2004] 2 ALL ER, 200 (CA), is misplaced. Bompas Decl., ¶37 & Ex. E. In that case, the court found that the Employment Rights Act of 1996 applied only to employment in Great Britain and was therefore not available to a British employee of an English company working in an overseas territory of the UK. Here, by contrast, the six London banks purchased and offered the Class B shares in the UK.

UK companies and individuals, including investment professionals falling within Article 19(5) of the FSMA Order 2005 and high net worth companies and other persons falling within Article 49(2)(a)-(d) of the FSMA Order 2005. Offering Mem. at 162. Moreover, the London banks represented and warranted that they complied with various provisions of the FSMA in offering the Class B shares to potential investors in the UK. *Id.* at 158. The London banks purchased the shares – many for their own investment purposes – and solicited from potential investors, including potential investors in the UK, indications of interest in acquiring the Class B shares. *Id.* at 145-151.

As explained by Mr. Blair, the plain language of the FSMA shows that it applies to this case because the Class B shares were offered to the public in the UK. Blair Decl., ¶¶19-24. Section 102B of the FSMA provides:

(1)     For the purposes of this Part [ PART VI ] there is an offer of transferable securities to the public if there is a communication to any person which presents sufficient information on –

(a)     the transferable securities to be offered, and

(b)     the terms on which they are offered,

to enable an investor to decide to buy or subscribe for the securities in question.

(2)     For the purposes of this Part, to the extent that an offer of transferable securities is made to a person in the United Kingdom it is an offer of transferable securities to the public in the United Kingdom.

Bompas Decl., Ex. B at 52; Blair Decl., ¶¶22-23.

Even defendants' expert, Mr. Bompas, acknowledges that a prospectus complying with Part VI of the FSMA is required when making offers of shares to the public in the UK. Bompas Decl., ¶25.3 & Ex. B at 13 (§85 of the FSMA). That requirement has been met. As explained by Mr. Blair, the phrases "to any person" in §102B(1) and "a person" in §102B(2) show that an offer to a single person is sufficient. Blair Decl., ¶¶23-24. It cannot be disputed that the Class B shares were

also offered to the public in the UK because the six London banks purchased the shares from CCC. *Id.*, ¶27.

Thus, the facts disprove defendants' contention that §90 does not apply because plaintiffs did not allege that CCC intended to or did offer securities on a UK-regulated market or to the UK public. MTD at 78; Bompas Decl., ¶¶26.2, 34 (the "Offering did not include any offer to the public in the United Kingdom"). As described above, it is explicitly stated in the Offering Memorandum that the Class B shares were being offered to the public in the UK. Indeed, Mr. Bompas cites the page of the Offering Memorandum in which it is stated that the Class B shares would be offered to the public in the UK. Bompas Decl., ¶34 & n.11 (citing Offering Mem. at 158).

## C.  The UK Was the Home State for the Offering

The facts alleged in the Complaint and included in the Offering Memorandum support the conclusion that the UK was the "home state" for the offering. Defendants assert that they are not "persons responsible" under the FSMA because the UK is not the "home state" of CCC. MTD at 77; Bompas Decl., ¶¶56-60. But several facts indicate Mr. Bompas is wrong; and, as explained by Mr. Blair, discovery is necessary to conclusively establish which European Union country is the "home state." As stated by the United States Supreme Court in *Twombly*, the §90 claim is adequately pled at this stage of the case if the facts "suggest" that the UK was the home state and "raise a reasonable expectation that discovery will reveal evidence" that the UK was the home state. 550 U.S. at 556. Indeed, that is the case even "if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.*

Mr. Bompas admits that the "home state" includes the state where the shares "were to be [first] offered to the public" if the state in which the issuer was incorporated was not a member of the European Union. Bompas Decl., ¶¶56, 59 & n.23. The UK is the "home state" because:

- 6 -

(1) Guernsey (CCC's state of incorporation) is not a member of the European Union; and (2) the Class B shares were first offered in the UK.  Blair Decl., ¶¶40-50.

Mr. Bompas contends that the Netherlands is the "home state" because that is where the offering memorandum was filed.  Bompas Decl., ¶60.  But the authority upon which Mr. Bompas relies (§102C of the FSMA and Article 2.1(m)(3) of the Prospectus Directive) clearly states that the "home state" is the "[m]ember [s]tate where the securities are intended to be offered to the public for the first time after the date of entry into force of this Directive *or* where the first application for admission to trading on a regulated market is made, at the choice of the issuer, the offeror or the person asking for admission."  *Id.*, ¶56, n.23, Ex. B at 53 & Ex. G.

As explained by Mr. Blair, the text of Prospectus Directive Article 2.1(m)(iii) states that the issuer, offeror or applicant chooses whether the home state will be the state where the securities were first intended to be offered to the public or the state where the first application for trading on a regulated market was made.  Blair Decl., ¶¶43-44.

Ultimately, the determination about which European Union country is the "home state" is an issue of fact that can be determined only after discovery. *Id.*, ¶¶6-8, 41-50.  For example, discovery is needed to determine where previous offers of class B shares occurred. *Id.*, ¶¶46-50.  As explained by Mr. Blair, it is stated in the Offering Memorandum that the issuer raised $600 million from the sale of Class B shares before the global offering and that a series of offers were made somewhere well in advance of the offer made via the Offering Memorandum and the June 29, 2007 Supplemental Offering Memorandum. *Id.*, ¶¶47-49.  If evidence proves that there was an offer of the Class B shares in the UK and that it was the first offer in the European Union, then the UK would be the "home [s]tate." *Id.*, ¶50.  According to Mr. Blair, this possibility is not improbable (*id.*, ¶49), which renders plaintiffs' allegation "plausible" and not appropriate for dismissal. *Twombly*, 550 U.S. at 556.

- 7 -

In sum, the facts alleged in the Complaint and included in the Offering Memorandum plus reasonably anticipated discovery are sufficient to establish the FSMA §90 claim.  The facts alleged in the Complaint and included in the Offering Memorandum establish a sufficient nexus between the offering and the UK and that the Class B shares were offered to the public in the UK.  Further, the facts included in the Offering Memorandum and the Blair Declaration indicate that the UK was the "home state" for the offering and for Class B shares sold before the offering.  However, discovery is necessary to conclusively establish which European Union country was the "home state."

## III.    CONCLUSION

Based on the foregoing, plaintiff Glaubach respectfully requests that the Court deny defendants' motions to dismiss the FSMA §90 claim.

DATED:  June 6, 2012                    THE LAW OFFICE OF ROGER M. ADELMAN
                                        ROGER M. ADELMAN (D.C. Bar No. 056358)


                                        s/ Roger M. Adelman
                                        ROGER M. ADELMAN

                                        1100 Connecticut Ave., NW, Suite 730
                                        Washington, DC  20036
                                        Telephone:  202/822-0600
                                        202/822-6722 (fax)
                                        radelman@erols.com

                                        Local Counsel

                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        MARK SOLOMON
                                        BRIAN O. O'MARA (D.C. Bar No. 996144)
                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)

715679_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER P. SEEFER
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ABRAHAM, FRUCHTER & TWERSKY, LLP
JACK G. FRUCHTER
One Pennsylvania Plaza, Suite 2805
New York, NY  10119
Telephone:  212/279-5050
212/279-3655 (fax)

Counsel for Plaintiff Jonathan Glaubach

715679_1

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 6, 2012.

       s/ Roger M. Adelman

ROGER M. ADELMAN

THE LAW OFFICE OF ROGER M. ADELMAN
1100 Connecticut Ave., NW, Suite 730
Washington, DC  20036
Telephone:  202/822-0600
202/822-6722 (fax)
E-mail: radelman@erols.com

715679_1

# Mailing Information for a Case 1:11-cv-01142-ABJ

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Roger M. Adelman**
  radelman@erols.com,tlatimer@csgrr.com

- **S. Ashar Ahmed**
  aahmed@rgrdlaw.com,nnewton@rgrdlaw.com

- **Alison C. Barnes**
  abarnes@robbinsrussell.com

- **Jonathan Watson Cuneo**
  jonc@cuneolaw.com,brendant@cuneolaw.com

- **Joel Davidow**
  joel@cuneolaw.com

- **Claire Angela Delelle**
  claire.delelle@lewisbaach.com

- **H. Bradford Glassman**
  brad.glassman@lewisbaach.com

- **Richard D. Greenfield**
  whitehatrdg@earthlink.net,ggsec@earthlink.net

- **Eric Leslie Lewis**
  eric.lewis@lewisbaach.com

- **Matthew E. Miller**
  mmiller@cuneolaw.com,ecf@cuneolaw.com,jonc@cuneolaw.com

- **Brian O. O'Mara**
  bomara@rgrdlaw.com,e_file_sd@rgrdlaw.com,kirstenb@rgrdlaw.com,nnewton@rgrdlaw.com

- **Gary A. Orseck**
  gorseck@robbinsrussell.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **Robert M. Rothman**
  rrothman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Christopher P. Seefer**

chriss@rgrdlaw.com,nnewton@rgrdlaw.com

- **Mark Solomon**
  marks@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Sarah F. Teich**
  steich@wc.com

- **Robert A. Van Kirk**
  rvankirk@wc.com

- **Richard Hackney Wiegmann**
  hwiegmann@wc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)