# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **D.J. WU, DANIEL BERGMAN, ALNEIL ASSOCIATES** and **MICHAEL GAD**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**JOHN CRUMPTON STOMBER,  et al.,**<br><br>Defendants. | Case No. 11-cv-02287 |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED CONSOLIDATED COMPLAINT AND/OR TO AMEND JUDGMENT

Daniel Bergman, Michael Gad, and AlNeil Associates. (collectively, the "New York Plaintiffs") in Action No. 11-2287 respectfully move (1) pursuant to Fed. R. Civ. P. 15(a)(2) for leave of Court to file the proposed "Second Amended Complaint" attached hereto as Exhibit A, and/or (2) pursuant to Fed. R. Civ. P. 59(e) to amend the Court's judgment of August 13, 2012.

It is customary in this Circuit, particularly in fraud actions, to afford a plaintiff at least one opportunity to cure any defects in a complaint following dismissal.  The present proposed amendment is timely, will not impose any undue burden on the Defendants, is not brought in bad faith, and there has been no repeated failure to cure deficiencies.  Additionally, the proposed amendment is not futile, as it addresses all deficiencies found by the Court to exist with respect to those claims that Plaintiff seek to replead, and, or alternatively, certain of the Court's findings pertinent to those claims were in error, and should be corrected pursuant to Fed. R. Civ. P. 59(e).

This motion is supported by the "Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint and/or to Amend Judgment." A proposed order is also submitted herewith.

September 10, 2012                  Respectfully Submitted,

                                   ___/s/ Matthew E. Miller___
                                   Jonathan W. Cuneo (D.C. Bar No. 939389)
                                   Joel Davidow (D.C. Bar No. 50849)
                                   Matthew E. Miller (D.C. Bar No. 442857)
                                   CUNEO GILBERT & LADUCA, LLP
                                   507 C Street, N.E.
                                   Washington, DC 20002
                                   (202) 789-3960

                                   Richard D. Greenfield (Md. Bar No. 07895)
                                   Marguerite R. Goodman (D.C. Bar No. 93626)
                                   GREENFIELD & GOODMAN, LLC
                                   250 Hudson Street, 8th Floor
                                   New York, N.Y.  10013
                                   (917) 495-4446

                                   *Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**D.J. WU, DANIEL BERGMAN, ALNEIL ASSOCIATES** and **MICHAEL GAD**, individually and on behalf of all others similarly situated,

Case No. 11-cv-2287

Plaintiffs,

v.

**JOHN CRUMPTON STOMBER,  et al.,**

Defendants.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND/OR TO AMEND JUDGMENT

September 10, 2012

CUNEO GILBERT & LADUCA, LLP
Jonathan W. Cuneo (D.C. Bar No. 939389)
Joel Davidow (D.C. Bar No. 50849)
Matthew E. Miller (D.C. Bar No. 442857)
507 C Street, N.E.
Washington, DC 20002
(202) 789-3960

GREENFIELD & GOODMAN, LLC
Richard D. Greenfield (Md. Bar No. 07895)
Marguerite R. Goodman (D.C. Bar No. 93626)
250 Hudson Street, 8th Floor
New York, N.Y.  10013
(917) 495-4446

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

I.   Pertinent Facts and Procedural History .......... 1

  A.  Carlyle Capital Corp. .......... 1

  B.  Pertinent Procedural History .......... 2

      1.  The Commencement and Consolidation of These Actions .......... 2

      2.  The Motions to Dismiss .......... 4

II.  Argument .......... 5

  A.  There is no Undue Delay .......... 6

  B.  There is no Evidence of Bad Faith .......... 7

  C.  Defendants Will Not Be Unduly Prejudiced by the Proposed Amendment .......... 7

  D.  There Has Been No "Repeated Failure to Cure Deficiencies" .......... 8

  E.  The Proposed Amendment Is Not Futile .......... 9

      1.  Plaintiffs Have Pleaded An Actionable Omission in Defendants' Failure to Disclose the Occurrence of a Liquidity Crisis and Failure of CCC's Business Model in June 2007 .......... 9

      2.  Plaintiffs Have Substantially Amended Their Allegations Pertinent to Loss Causation .......... 12

      3.  Plaintiffs Have Pleaded Direct Reliance, and the Court Should Reconsider Its Failure to Address Whether Reliance May Be Presumed (Under the Common Law) on a Uniform Set of Written Representations .......... 12

      4.  Plaintiffs Have Removed Any Redundancy Among the Parties to the New York and D.C. Actions, Precluding Any Possible Finding that the Actions are, Even in Part, Duplicative .......... 13

III. Conclusion .......... 14

# TABLE OF AUTHORITIES

## Cases

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972)    5

*Alley v. Resolution Trust Corp.*, 984 F.2d 1201 (D.C.Cir.1993)    8

*Blakely v. Wells*, 209 Fed. Appx. 18 (2d Cir. Dec. 13, 2006)    8

*Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080 (D.C. Cir. 1998)    5, 7, 8

*Compare Appalachian Voices v. Chu*, 262 F.R.D. 24 (D.D.C. 2009)    7

*Congress Credit Corp. v. AJC Int'l, Inc.*, 42 F.3d 686 (1st Cir.1994)    13

*Does I through III v. Dist. of Columbia*, 815 F. Supp. 2d 208 (D.D.C. 2011)    6, 7, 8

*Djourabchi v. Self*, 240 F.R.D. 5 (D.D.C.2006)    7

*Dove v. Wash. Metro. Area Transit Auth.*, 221 F.R.D. 246 (D.D.C. 2004)    7

*Firestone v. Firestone*, 76 F.3d 1205 (D.C.Cir.1996)    5, 6

*Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)    6

*Maertin v. Armstrong World Industries, Inc.*, 241 F.Supp.2d 434 (D.N.J. 2002)    13

*Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363 (7th Cir.1997)    12

*McQueen v. Woodstream Corp.*, 244 F.R.D. 26 (D.D.C. 2007)    6

*Millar v. Bay Area Rapid Transit Dist.*, 236 F.Supp.2d 1110 (N.D.Cal.2002)    7

*Morrison v. National Australia Bank Ltd.*, 130 S Ct. 2869 (2010)    5, 9

*Nat'l Black Chamber of Commerce v. Busby*, 795 F. Supp. 2d 1 (D.D.C. 2011)    8

*Nat'l Trust v. Dep't of State*, 834 F. Supp. 453 (D.D.C.1993)    6

*Richardson v. United States,* 193 F.3d 545 (D.C.Cir.1999)    6

*Ronzani v. Sanofi, S.A.*, 899 F.2d 195 (2d Cir. 1990)    8

*Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156 (9th Cir. 2009)    4

*Shields v. Wash. Bancorp.*, 1992 WL 88004 (D.D.C. Apr.7, 1992)    6

*Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir.1987)    7

*TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976)                    11

*Twaddle v. Diem*, 200 Fed. Appx. 435 (6th Cir. 2006)                    13

*U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer Services*, 778    6
F.Supp.2d 37 (D.D.C. 2011)

*Williamsburg Wax Museum v. Historic Figures, Inc.*, 810 F.2d 243    8
(D.C.Cir.1987)

**Statutes, Rules and Legislative Materials:**

Exchange Act and Rule 10b-5                    2

Fed. R. Civ. P. 12(b)                    6

Fed. R. Civ. P. 15(a)                    1, 5

Fed. R. Civ. P. 59(e)                    1, 9, 13

**Treatises and Other Materials:**

C. Wright & A. Miller, *Fed. Prac. & Proc. Civ.* § 2810.1 (2d    6, 7
ed.1995)

Plaintiffs E.L. Phelps, Michael J. McLister, Dzing Jean Wu, Susan M. Liss, William F. Schaefer (collectively, the "D.C. Plaintiffs") in Actions Nos. 11-1142 and 11-1143, and Plaintiffs Daniel Bergman, Michael Gad, and AlNeil Associates. (collectively, the "New York Plaintiffs") in Action No. 11-2287 (the term "Plaintiffs" will refer, collectively, to the D.C. Plaintiffs and the New York Plaintiffs)  respectfully submit this memorandum of points and authorities (identical memoranda filed separately in the D.C. and New York Actions) in support of their  motions, for orders (1) pursuant to Fed. R. Civ. P. 15(a), granting leave (a) to the D.C. Plaintiffs to file the proposed "Amended Consolidated Complaint" (the "ACC"[1]) attached as Exhibit A to their motion and (b) to the New York Plaintiffs to file the proposed "Second Amended Complaint" attached as Exhibit A to their motion, and/or (2) pursuant to Fed. R. Civ. P. 59(e), to amend the Court's judgment entered August 13, 2012.  For the reasons stated below, the motion should be granted.[2]

## I.  Pertinent Facts and Procedural History

### A.  Carlyle Capital Corp.

Carlyle Capital Corp. ("CCC" or "the Company") is a limited company incorporated in Guernsey, Channel Islands in August 2006, with its nominal principal place of business at all pertinent times in Washington, D.C.  CCC was an investment fund heavily promoted by the Carlyle Group, a Washington area investment bank consisting of various affiliated entities, including Defendants Carlyle Investment Management, LLC ("CIM"), T.C. Group, LLC ("TCG"), and TC Group, Holdings, LLC ("TCG Holdings") (collectively known as "the Carlyle Entities").  Between June 19 and July 3, 2007, CCC conducted an offering (the "Offering") to U.S. investors of its restricted depositary shares, and to foreign investors of its Class B Shares. Class B Shares were thereafter traded on the Euronext exchange in Amsterdam.

---

[1] For ease of reference, all citations to the new complaints are to the ACC sought to be filed in the D.C. Actions.  The proposed Second Amended Complaint sought to be filed in the New York Action is substantively identical.

[2] The undersigned have conferred with counsel for Defendants concerning the pending motion, and Defendants (other than CCC, whose position is uncertain) oppose this motion.  Absent unanimous consent of all parties, this motion for leave is required.

On March 17, 2008, the Royal Court of Guernsey entered a "winding down" order directing that CCC be liquidated, and appointed Alan Roberts and Neil Mather as joint liquidators. Christopher Morris and Adrian John Denis Rabet were appointed as additional joint liquidators on March 18, 2008. Defendants repeatedly obstructed the liquidators' efforts to obtain custody of the complete books and records of CCC. On or about July 7, 2010, the liquidators commenced various civil actions against the former directors of CCC and others in various courts in Delaware, the District of Columbia, New York and Guernsey alleging that defendants breached their fiduciary duties to CCC by causing it to acquire an excessive portfolio of RMBS and to borrow excessively from repo lenders without reserving adequate liquid assets to enable it to meet margin calls.

### B. Pertinent Procedural History

#### 1. The Commencement and Consolidation of These Actions

Actions Nos. 11-1142 and 11-1143 (the "*Phelps* Actions") were commenced in this Court on June 21, 2011 by the Plaintiff Phelps. In the initial complaints filed in the two *Phelps* Actions, Plaintiffs alleged, individually and on behalf of a Class of all United States purchasers of CCC shares and RDSs in the Offering, and on Euronext during a Class Period from July 4, 2007 to March 17, 2008, that the foregoing conduct was in violation of §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated by the Securities & Exchange Commission.

A third action, Action No. 11-1523, was commenced in this Court on or about August 20, 2011 by investor Brian Glaubach, alleging violation of the Financial Services and Markets Act, 2000, of the United Kingdom. The foregoing three actions commenced in, and consolidated by, this Court are referred to as the "D.C. Actions."

Action No. 11-2287 (the "New York Action") was commenced in the Supreme Court, County of New York, State of New York, on September 1, 2011, alleging claims under the common law and foreign law. On or about October 14, 2011, the action was removed to the U.S. District Court for the Southern District of New York.

On or about October 27, 2011, the D.C. Plaintiffs filed an "Amended Complaint" in the *Phelps* Actions which (1) added common law and foreign law claims, and (2) added facts pertinent to choice of law determinations and the application of the (U.S.) federal securities laws. The Amended Complaint did not effect any other substantive amendments.

Also on or about October 27, 2011, an "Amended Complaint" was filed in the New York Action that (1) added facts pertinent to choice of law determinations, and (2) added the New York Plaintiffs as parties and removed certain of the D.C. Plaintiffs who were previously parties to that action. The Amended Complaint did not effect any other substantive amendments.

On November 16, 2011, the Court entered an order appointing the D.C. Plaintiffs as Lead Plaintiffs in the three D.C. Actions pursuant to the federal securities laws. On December 5, 2011, the D.C. Plaintiffs filed a "Consolidated Complaint" which did not contain any material amendments from the previously operative "Amended Complaint."

On or about December 23, 2011, the New York Action was transferred to this Court on Plaintiffs' motion.

The operative Consolidated Complaint in the D.C. Actions and Amended Complaint in the New York Action allege that certain defendants made material misrepresentations and failed to disclose material adverse facts about the Company's true operating and financial condition, the efficacy of CCC's business model, and the adequacy of its liquidity position. Specifically, all four complaints allege that Defendants disseminated a false and misleading offering memorandum in connection with the Offering. Plaintiffs alleged the following misrepresentations and omissions with respect to the Offering: (1) a failure to disclose a liquidity crisis occurring at CCC in June 2007, (2) the failure to disclose a downward departure from CCC's minimum liquidity cushion, (3) deceptive dividend projections, (4) misrepresentations and omissions pertaining to CCC's "fair value reserves" (net asset value) and (5) a failure to disclose increases in haircuts demanded by certain of CCC's lenders.

The operative complaints further allege that, continuing after the Offering, the Defendants continued to make certain misrepresentations and omissions that caused the share price of CCC's Class B shares to be inflated.

### 2.  The Motions to Dismiss

The Defendants (with the exception of CCC itself, which obtained an extension of time to respond to the complaints) filed motions to dismiss both the New York Action, and the Consolidated Complaint filed in the D.C. Actions.

On August 13, 2012, the Court entered an order granting the foregoing motions to dismiss.  The Court held, in pertinent part, as follows:

 (1) Plaintiffs had failed to state an actionable claim that Defendants had failed to disclose the occurrence of a liquidity crisis in June 2007.[3]  The Court held as follows:

> But plaintiffs fail to specify the reason why it was misleading for defendants to omit this particular circumstance from its clear disclosure of recent losses. *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009) ("A securities fraud complaint based on a purportedly misleading omission must specify the reason or reasons why the statements made . . . were misleading or untrue, not simply why the statements were incomplete.") (internal quotation marks and citation omitted). As the Court has already noted, the Offering Memorandum and Supplement disclosed the significant decline in fair value reserves and the changes in interest rates that occurred prior to the Offering.  And plaintiffs have failed to connect the omission of the "liquidity event" to any statement in the Offering documents that was rendered misleading by its absence, as the PSLRA requires.[4]

Memorandum Opinion, at 44-46.

(2) Plaintiffs had failed to adequately plead loss causation (apparently, solely as to their federal claims).  *Id*. at 47-53.

_____

[3] The Court also dismissed Plaintiffs' claims as to other misrepresentations and omissions alleged to be actionable.  These issues are not pertinent to the present motion, however, as Plaintiffs do not seek leave to replead those claims, but do expressly preserve the right to seek appellate review of the dismissal of such claims.

[4] The Court further held that "plaintiffs' claim that investors were not put on notice of the risks associated with CCC's business model is belied by the twenty-five pages' worth of warnings and disclosures in the Offering Memorandum that detailed exactly what *could* go wrong with these particular types of investments. Off. Mem at 10–36."  Memorandum Opinion, at 46 (emphasis added).  Plaintiffs, however, *never* alleged, anywhere, that they were not "put on notice of the risks associated with CCC's business model."

(3) Plaintiffs had failed to allege reliance as to their common law claims pertaining to the Offering, (a) noting that Plaintiffs had asserted no allegation of direct reliance, (b) holding that the presumption of reliance on omissions afforded by *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), was not applicable to common law claims, and (c) not addressing the contention asserted by Plaintiffs that reliance could be presumed under the common law as to a uniform set of written misrepresentations. *Id*. at 54-57

(4) The New York action was "duplicative" of the D.C. Actions and subject to dismissal on this additional ground. *Id*. at 64-66.

The Court further held, *inter alia*, that *Morrison v. National Australia Bank Ltd.,* 130 S Ct. 2869 (2010) did not preclude the assertion of federal securities laws concerning the Offering, and that none of Plaintiffs' aftermarket claims were actionable.

## II. Argument

The present motion is brought as a motion for leave to amend pursuant to Fed. R. Civ. P. 15(a)(2), as Plaintiffs have made material amendments to their complaints that address all of the four material defects found by the Court. Plaintiffs also move, additionally and/or in the alternative, pursuant to Fed. R. Civ. P. 59(e) to amend the Court's judgment, as to certain aspects of the Court's orders of August 13, 2012, to extent that the proposed amendments are held not to be entirely sufficient to cure the defects found by the Court.

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course and thereafter by leave of court, which "leave shall be freely given when justice so requires." The D.C. Circuit has held on multiple occasions that "it is an abuse of discretion to deny leave to amend [without giving a] sufficient reason." *Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083 (D.C. Cir. 1998) (*quoting Firestone v. Firestone,* 76 F.3d 1205, 1208 (1996)). "Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Does I through III v. Dist. of Columbia*, 815 F. Supp. 2d 208, 213-14 (D.D.C. 2011) (*quoting Richardson v. United States,* 193 F.3d 545, 548–

49 (D.C.Cir.1999) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962))).

It is well settled in this circuit that a plaintiff should typically be afforded at least one opportunity to amend his or her complaint following dismissal pursuant to Fed. R. Civ. P. 12(b)(6). In *Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C.Cir.1996), in fact, the D.C. Circuit has recognized that courts "almost always" grant leave to amend to cure deficiencies in pleading fraud. *Id*. at 1209. *Accord, e.g., U.S. ex rel. Digital Healthcare, Inc. v. Affiliated Computer Services*, 778 F.Supp.2d 37, 55-56 (D.D.C. 2011); *McQueen v. Woodstream Corp.*, 244 F.R.D. 26, 34 (D.D.C. 2007). Accordingly, the court should reserve dismissal with prejudice for "extreme situations where the pleader has had the opportunity to cure any deficiencies but either has not or cannot do so." *McQueen,* 244 F.R.D. at 34 (*quoting Shields v. Wash. Bancorp.,* 1992 WL 88004, *5 (D.D.C. Apr.7, 1992)).

To the extent that relief is required under Rule 59(e), relief is available under that rule when the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone* , 76 F.3d at 1208 (quoting *Nat'l Trust v. Dep't of State,* 834 F. Supp. 453, 455 (D.D.C.1993)); *see also* 11 C. Wright & A. Miller, *Fed. Prac. & Proc. Civ.* § 2810.1 (2d ed.1995) ("four basic grounds" for Rule 59(e) motion are "manifest errors of law or fact," "newly discovered or previously unavailable evidence," "manifest injustice," and "intervening change in controlling law").

### A. There is no Undue Delay

"Rule 15(a) does not prescribe any time limit within which a party may apply to the court for leave to amend." *Caribbean Broad. Sys.*, 148 F.3d at 184. Although undue delay can be grounds for denial, "[i]n most cases delay alone is not a sufficient reason for denying leave." *Id*. at 1084; *Does I through III*, 815 F. Supp. 2d at 214. There has been no undue delay. This action is in an early procedural stage, as no discovery has occurred, and motions to dismiss were decided just 28 days ago. *Compare Appalachian Voices v. Chu*, 262 F.R.D. 24, 26 (D.D.C.

2009) (proposed amendment timely where submitted shortly after entry of order granting motion to dismiss).

### B.  There is no Evidence of Bad Faith

Bad faith, for purposes of a motion for leave to amend, is typically defined as having some sort of procedural motive other than stating an actionable claim, such as destroying diversity jurisdiction, or delaying the proceedings.  See, e.g., *Sorosky v. Burroughs Corp.,* 826 F.2d 794, 805 (9th Cir.1987) (to destroy diversity jurisdiction); *Millar v. Bay Area Rapid Transit Dist.*, 236 F.Supp.2d 1110, 1113 (N.D.Cal.2002) (examples of bad faith include use of a motion to amend as a means to postpone the trial date, to impose additional expense on the opposing party, and to gain leverage in settlement negotiations).  Plaintiffs cannot conceive of how the proposed amendment could be construed of as being asserted in bad faith.

### C.  Defendants Will Not Be Unduly Prejudiced by the Proposed Amendment

Undue prejudice is the "most important factor" in evaluating a motion for leave to file an amended complaint.  *Djourabchi v. Self,* 240 F.R.D. 5, 13 (D.D.C.2006).  In fact, the D.C. Circuit has held that "[i]f no prejudice [to the non-moving party] is found, the amendment will be allowed." *Caribbean Broad. Sys.,* 148 F.3d at 1084 (citing 6 Charles Alan Wright, Arthur P. Miller & Mary K. Kane, Federal Practice & Procedure: Civil 2d § 1488, at 652, 659, 662–69 (1990 & Supp.1997)).

Undue prejudice means something more than "mere harm to the non-movant but a denial of the opportunity to present facts or evidence which would have been offered had the amendment been timely." *Does I through III*, 815 F. Supp. 2d at 215 (quoting *Dove v. Wash. Metro. Area Transit Auth.,* 221 F.R.D. 246, 248 (D.D.C. 2004)).  Undue prejudice may exist when a party would have chosen different counsel or employed a different litigation strategy had the amendment been made in a timely manner.   Courts have also considered whether a long-delayed amendment would require the parties to conduct substantial additional discovery. *See, e.g., Alley v. Resolution Trust Corp.,* 984 F.2d 1201, 1208 (D.C.Cir.1993) (granting leave to amend and noting that "[w]e consider it important ... that plaintiffs have represented in their

briefs on appeal the absence of any need to ... engage in additional discovery"). *Compare Williamsburg Wax Museum v. Historic Figures, Inc.,* 810 F.2d 243, 247 (D.C.Cir.1987) (affirming a district court's denial of leave to amend, over seven years after the filing of the initial complaint, where new discovery would be necessary).

In this action, Defendants will endure no particular hardship, even less any prejudice, from responding to the proposed amended complaints. These actions are still in their early stages, as no discovery has occurred.

### D.  There Has Been No "Repeated Failure to Cure Deficiencies"

It is well settled that granting leave to amend is appropriate even when the plaintiff had previously filed more than one complaint, where the plaintiff had not previously failed to cure deficiencies noted by the Court and or opposing parties. *Caribbean Broad. Sys.,* 148 F.3d at 1082 (granting leave to file third complaint (fourth complaint overall) in second action filed after earlier-filed action had been dismissed without prejudice in another court); *Does I through* III, 815 F. Supp. 2d  at 220-21 (granting leave to file second amended complaint after motion for summary judgment granted); *Nat'l Black Chamber of Commerce v. Busby*, 795 F. Supp. 2d 1, 2 (D.D.C. 2011) (granting motion for leave to file second amended complaint, after first amended complaint was dismissed).  *Accord, e.g., Blakely v. Wells,* 209 Fed. Appx. 18 (2d Cir. Dec. 13, 2006) (noting that "the district court had exceeded its discretion in dismissing plaintiffs' second amended complaint without granting leave to amend" in action in which deficiencies in the earlier complaints had not been noted by the district court); *Ronzani v. Sanofi, S.A.,* 899 F.2d 195, 198-99 (2d Cir. 1990) (district court abused its discretion in denying leave to file third complaint, where initial complaint was not amended in response to judicial comment).

There has been no "failure" to cure deficiencies. The various amendments were made for purposes other than correcting any substantive deficiencies. The October 2011 amendment in the *Phelps* Actions was effected to (1) add additional factual allegations pertaining to *Morrison* and choice of law issues, and (2) add common law claims. The December 2011 amendment in

the D.C. Actions was merely a consolidated complaint filed upon appointment of lead plaintiffs. Neither amendment was made for purposes of curing any possible substantive defect.

The October 2011 amendment (the sole amendment) in the New York Action was made (1) to add additional factual allegations pertaining to *Morrison* and choice of law issues, and (2) to add and remove certain parties. The amendment did not effect any substantive changes in the factual allegations.

Most importantly, the Defendants have only moved against the currently operative complaints, the Court has only considered the currently operative complaints, and there was a single round of briefing on motions to dismiss. This is not a circumstance in which the complaints were previously amended in response to one or more motions to dismiss. Plaintiffs did not burden the Defendants, nor the Court, with responding, or considering, more than one operative complaint in each action (and the two operative complaints are substantially identical).

### E. The Proposed Amendment Is Not Futile

Finally, the proposed amendment is not futile. Plaintiffs have made substantial changes to the operative complaints that address all four of the pertinent deficiencies identified in the Court's Memorandum Opinion. Alternatively, there are certain clear errors in the Court's Memorandum Opinion, subject to correction pursuant to Fed. R. Civ. P. 59(e), that further support the requested amendment and/or modification of the Court's judgment.

### 1. Plaintiffs Have Pleaded An Actionable Omission in Defendants' Failure to Disclose the Occurrence of a Liquidity Crisis and Failure of CCC's Business Model in June 2007

Plaintiffs have made several modifications pertinent to this allegation – the sole actionable omission or misrepresentation alleged in the proposed amended complaints.

First, Plaintiffs have described in some detail "why it was misleading for defendants to omit this particular circumstance" from the Offering Memorandum. Memorandum Opinion, at 45. Plaintiffs have explained, in considerably more detail, CCC's business model and narrow operating margins, and how it depends on very specific conditions in the repo lending market in order to meet its objectives, or even merely to survive. ACC, ¶¶ 41-54. Plaintiffs have further

explained, in more detail than previously provided, how the repo market operates, and the specific conditions that had arisen in June 2007 that made it extremely unlikely that CCC would ever be profitable, or even survive.   *Id.*, ¶¶ 66-78.  The truth was that CCC as an investment vehicle was failing, as the market conditions upon which its business model was based were no longer in existence.

Second, Plaintiffs have further explained that the partial disclosure of drops in the net asset value of CCC's portfolio (CCC disclosed the relatively modest declines in net asset value occurring prior to June 7, but not the more significant declines occurring thereafter), while certainly one relevant factor contributing to the liquidity crisis, was not the equivalent of disclosing the existence of a crisis that demonstrated the failure of CCC's business model.  *Id.*, ¶¶ 93, 105.  Other factors occurring in June 2007 were equally (if not more) important – the precipitous drop in the ABX.HE indices and the collapse of two Bear Stearns funds holding RMBS also had a significant effect on the repo market and the viability of CCC's business model.  *Id.*, ¶¶ 70,73.

Third, Plaintiffs have pleaded precisely which affirmative representations were rendered misleading by the omission in question.  *Id.*, ¶ 91.  To use a metaphor, CCC made repeated warnings that it would be harmed if it sailed into a hurricane, when, in fact, *it had* sailed into a hurricane and its equipment was malfunctioning.  All of these warnings of possible hurricanes, i.e., possible adverse conditions that could impair the profitability or viability of CCC's business model, were rendered misleading by the failure to disclose actual adverse events (i.e., a very real liquidity crisis that demonstrated the failure of CCC's business model) that had already occurred.

Fourth, Plaintiffs have added several paragraphs of allegations pertaining to the circumstances in which the SOM was filed and (not) distributed.  *Id.*, ¶¶ 102-13.  The filing of the SOM, which disclosed further declines in net asset value, appeared to be material to the Court's determination that no material omission occurred.  The more detailed allegations of the proposed amended complaints make abundantly clear that (1) the SOM was not distributed to anyone and was not intended to be seen by Plaintiffs or any members of the Class, (2) the

subscription dates of the Plaintiffs are provided, indicating that seven of the eight Plaintiffs in these actions had already executed their subscription agreements at the time the SOM was filed, (3) the Offering had been concluded on July 3, 2007, two business days following the filing of the supplement, as reflected in CCC's express release of the "final" sales figures for the Offering, (4) the date of July 11, 2007, described in the SOM, and erroneously (subject to correction under Rule 59(e)) by the Court, as the "settlement date," was merely, as described in the SOM itself, the date on which paper certificates would be distributed, (5), the subscription documents themselves, which are incorporated in the Offering Memorandum, conclusively establish that Offering subscriptions were irrevocable, and (6) there was no procedure in existence, even less one described to investors, for investors to withdraw their subscriptions. These factual allegations make it abundantly clear that there is, at a minimum a question of fact as to whether the SOM should even be considered, particularly in the context of specific allegations that it was not seen by any of the Plaintiffs or intended by the Defendants that it be seen by them or any other members of the Class. Furthermore, Plaintiffs have further pleaded that the SOM did not disclose the existence of the liquidity crisis that demonstrated the failure of CCC's business model, nor did it otherwise correct or amend anything in the Offering Memorandum, rendering it largely irrelevant whether it was procedurally sufficient. *Id.*, ¶ 106.

Alternatively, to the extent that these allegations are not sufficient to cure any defect in pleading this single omission, it was manifest error, subject to correction pursuant to Fed. R. Civ. P. 59(e), for the Court to hold even based on the currently operative complaints (and, even more so, on the proposed amended complaints) that this omission was not material. It is well-settled that an allegation is material for purposes of the federal securities laws where it would have affected the "total mix" of information available to investors. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Materiality of information is a "mixed question of law and fact" and generally not properly resolved by summary judgment. *Id.* at 450. Accordingly, "a materiality determination is rarely appropriate at the summary judgment stage, let alone on a

motion to dismiss." *Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 370 (7th Cir.1997)
The Court committed manifest error in finding this omission to be immaterial as a matter of law.

### 2. Plaintiffs Have Substantially Amended Their Allegations Pertinent to Loss Causation

Plaintiffs have alleged that Defendants failed to disclose a liquidity crisis occurring in
June 2007, that rendered it considerably more likely that CCC would fail than succeed, which
would have been of the utmost materiality to investors participating in the Offering. Plaintiffs
have further pleaded that this crisis was the beginning of the run on the repo market (a shadow
banking system that at least rivals the nation's formal banking system in size and importance)
that began in June 2007, and continued until late 2008. *Id.*, ¶¶ 69-70. Even after raising funds
in the Offering that enabled it to survive for another 8 months, CCC was eventually crushed by
this worsening liquidity crisis in March 2008. *Id.*, ¶¶ 152-54. This was a materialization of
precisely what had already occurred, and went undisclosed, in June 2007.

Plaintiffs have also strengthened their allegations concerning the price movements in
CCC's Class B Shares, both in the Fall of 2007 and Spring of 2008, in response to adverse
developments disclosed by CCC. *Id.*, ¶¶ 140-50, 153-55. Plaintiffs have also appended as an
exhibit to the proposed complaints the price movements of CCC Class B Shares, as well as those
of certain competing investment funds and the broader S&P 500 index. This data makes it
abundantly clear that CCC's share price declined in the Fall of 2007, and collapsed in the Spring
of 2008, due to company-specific events and not simply due to broader macroeconomic
conditions. While the S&P 500 index declined during this time period, it did so only modestly.
CCC's competitors, moreover, did not all similarly collapse in March 2008, and many, in fact,
maintained their value through this time period. *See* ACC, Exh. 1.

### 3. Plaintiffs Have Pleaded Direct Reliance, and the Court Should Reconsider Its Failure to Address Whether Reliance May Be Presumed (Under the Common Law) on a Uniform Set of Written Representations

Plaintiffs have addressed the Court's finding that their common law claims were subject
to dismissal for failure to plead reliance. Specifically, Plaintiffs have pleaded, in the proposed

amended complaints, direct reliance on the operative omission, pleading that they would not have made their purchases in the Offering had they been aware of the occurrence of a liquidity crisis and failure of CCC's business model in June 2007.   ACC, ¶ 178.   This cures any deficiency found by the Court pertaining to Plaintiffs' allegations of reliance.

Alternatively, the Court committed manifest error, subject to correction pursuant to Fed. R. Civ. P 59(e), by failing to consider the contention advanced by Plaintiffs that reliance could be presumed under the common law on a uniform set of written misrepresentations.  *See* Memorandum Opinion, at 55 (citing this contention, but not addressing it).  This doctrine is black-letter law, acknowledged by respected treatises at least as early as the 1930s, recognized by the D.C. Circuit in 1951, and adopted by the courts in California, Ohio, New Jersey, Oregon and countless other jurisdictions.

### 4.   Plaintiffs Have Removed *Any* Redundancy Among the Parties to the New York and D.C. Actions, Precluding Any Possible Finding that the Actions are, Even in Part, Duplicative

It is well-settled that an action is not subject to dismissal as "duplicative," unless, at a bare minimum, it involves the same parties. *See, e.g., Twaddle v. Diem*, 200 Fed. Appx. 435, 439 (6th Cir. 2006) (It was an abuse of discretion to dismiss second action against different defendants, which was "not truly duplicative"); *Congress Credit Corp. v. AJC Int'l, Inc., 42 F.3d* 686, 689 (1st Cir.1994) (holding that actions were not "duplicative" when different plaintiffs were involved in actions); *Maertin v. Armstrong World Industries, Inc.,* 241 F.Supp.2d 434, 453 (D.N.J. 2002) (same).

The operative complaints in the D.C. and New York Actions did share one common plaintiff – Plaintiff Wu.  The proposed amendments remove Ms. Wu from the New York Action, and leave her as a plaintiff in the D.C. Actions.  This amendment precludes any possible finding of "claim splitting" that renders one or both actions duplicative.

To the extent that the Court has held, or would hold, that the mere representation of different parties by the same counsel somehow renders one or both actions duplicative, the Court has committed a manifest error of law subject to correction pursuant to Fed. R. Civ. P. 59(e).

Defendants have not cited, and the undersigned are unaware, of any decision from any court in any jurisdiction holding that a later-filed action filed by a "Plaintiff B" can be dismissed as "duplicative" of a substantively similar action filed by a "Plaintiff A" if they are represented by the same counsel.  This consideration is, however, legally irrelevant.  The Court's holding is unprecedented.

## III. Conclusion

For the reasons stated above, the D.C. Plaintiffs (E.L. Phelps, Michael J. McLister, Dzing Jean Wu, Susan F. Liss and William F. Schaefer) and New York Plaintiffs (Daniel Bergman, Michael Gad and AlNeil Associates), respectfully pray that the Court grant their motions for leave to file their respective proposed further amended complaints, and/or amend its judgment so as to sustain the single omission claim sought to be pleaded in the proposed amended complaints.

September 10, 2012

Respectfully Submitted,

  /s/ Matthew E. Miller
Jonathan W. Cuneo (D.C. Bar No. 939389)
Joel Davidow (D.C. Bar No. 50849)
Matthew E. Miller (D.C. Bar No. 442857)
CUNEO GILBERT & LADUCA, LLP
507 C Street, N.E.
Washington, DC 20002
(202) 789-3960

Richard D. Greenfield (Md. Bar No. 07895)
Marguerite R. Goodman (D.C. Bar No. 93626)
GREENFIELD & GOODMAN, LLC
250 Hudson Street, 8th Floor
New York, N.Y.  10013
(917) 495-4446

*Attorneys for Plaintiffs and the Class*